## In the Matter of the Estate of IDA C. RANDOLPH, Deceased.

Surrogate's Court, Kings County, June 8, 1936.

*David C. Bennett,* for the petitioner, Helen J. Randolph.

*Harold O. Kissam,* for the creditor, The Morris Plan Industrial Bank of New York.

*Coombs & Wilson,* for the trustee, The Chase National Bank.

WINGATE, S.  Certain features of the present proceeding are novel so far as the diligence of counsel or the independent research of the court have resulted in the discovery of previous pertinent precedents.

By the will of Ida C. Randolph, probated in this court on April 16, 1930, a trust of certain real property was erected, with the net income payable to her grandson, Harmon, until he attained the age of thirty-five years, whereupon the principal was to be paid to him, if living, or to his wife and children, if he predeceased.  He is still living and has not yet attained the specified age.

According to the untraversed allegations of the petition, the trust has yielded an annual income of from exceeding $12,000 to over $7,600.

Harmon intermarried with the petitioner in 1925 and there were two children of the marriage, both of whom are now living. The parties separated in 1934, at which time a separation agreement was effected which, as amended, provided that the petitioner should retain the custody of the children and for their support and her own should receive the sum of $500 a month from the trust fund, for which purpose the instrument purported to effect a *pro tanto* assignment of the income of the trust during its continuance, and of the rents of the principal fund after its termination. A divorce was subsequently obtained in a foreign State, the final decree of which embodied provisions substantially similar to those of the agreement. These payments were duly made to and including the month of February, 1936, with a partial payment in March.

In January, 1935, Harmon secured a loan from the Morris Plan Industrial Bank for $2,496, and as security therefor purported to assign to it his interest under the trust. Default in payment having occurred, suit was instituted and judgment entered on April 10, 1936, for $1,136. After compliance with the usual preliminaries, the judgment creditor issued an execution against the income in the hands of the trustee pursuant to section 684 of the Civil Practice Act.

Being thus faced by the two rival claimants, the trustee has wisely declined to make any payment whatsoever until the rights of the several parties have been authoritatively defined.

The usually applicable rule making future income of a trust inalienable is entirely familiar. (Pers. Prop. Law, § 15; Real Prop. Law, § 103.) It is also a recognized basic principle that, despite these enactments, the creditors of a beneficiary may reach any surplus portion of that income " beyond what is necessary for the suitable support of the debtor and those dependent upon him, in the manner in which they have been accustomed to live." (*Williams* v. *Thorn*, 70 N. Y. 270, 278.) (See, also, *Wetmore* v. *Wetmore*, 149 N. Y. 520, 528; *Tolles* v. *Wood*, 99 id. 617.)

At common law such excess could be reached only through the medium of a judgment creditor's action in equity, but by the provisions of section 684 of the Civil Practice Act an additional partial remedy has been provided which permits an execution, *inter alia*, against " income from trust funds or profits  *  *  * due and owing to the judgment debtor or  *  *  * thereafter [to] become due and owing to him," to the extent of not exceeding ten per centum thereof.

When such an execution becomes effective, it attaches as a lien upon any sum which may become due and payable to the judgment debtor. (*Hamilton* v. *Drogo*, 241 N. Y. 401, 404.)

From the fact that subdivision 1 of the section provides that the amount collectible in this manner "shall not exceed ten per centum" of the total income, and that subdivision 4 authorizes application for modification of the execution theretofore allowed, it seems apparent that the purpose of the enactment was to furnish a substantial equivalent to the ordinary remedy of a judgment creditor's action without its ponderous and tedious forms, and results merely in a legislative determination that, *prima facie*, ninety per cent of an individual's income is all that is necessary for his support and that of his dependents.

When the matter is viewed in this light, it becomes obvious that the execution against income once having been granted, is not subject to collateral attack and that any modification of the order must be sought in the tribunal of original jurisdiction.

The limitations of the statute are inherent in its terms. The levy of the execution is only upon the income "due or to become due to said judgment debtor" to a certain specified percentage thereof. This leaves untouched the question of the amount or amounts which are actually to accrue.

It is at this point that the contention of the petitioner becomes important, to the effect that by reason of the transactions which occurred between her and the judgment debtor, an actual assignment of income to the extent of $6,000 a year had been perfected, by reason of which the only income upon which the execution of the judgment creditor could attach is the excess, if any, of the total income of the trust over the allegedly assigned sum.

The legal reliance of the petitioner in this regard is placed on seven decisions of this State, one of Wisconsin and one of New Jersey. The Wisconsin authority (*Lamberton* v. *Pereles*, 87 Wis. 449; 58 N. W. 776) is expressly not in point, since the court clearly notes (pp. 460, 461) that in that jurisdiction there is no rule, "statutory or otherwise," which inhibits the alienation of trust income by the *cestui que trust*, thus distinguishing the rule there in vogue from that in effect in New York under section 15 of the Personal Property Law.

*Wright* v. *Leupp* (70 N. J. Eq. 130; 62 A. 464), the New Jersey case cited, in its only pertinent pronouncement (p. 133) goes no further than the doctrine of the New York cases which hold that in a determination of the amount of excess income which may be made available for creditors of the *cestui que trust*, the requirements of the dependents of the latter should be taken into consideration.

The limits of the doctrine of the New York cases cited will become apparent by their consideration in substantially chronological order.

*Williams* v. *Thorn* (70 N. Y. 270) was an ordinary judgment creditor's action to subject excess income of a trust to the claims of a creditor. It was held (p. 278) that future income "beyond what is necessary for the suitable support of the debtor and those dependent upon him, in the manner in which they have been accustomed to live, is clearly applicable * * * to the claims of his creditors."

According to the headnote of *Tolles* v. *Wood* (99 N. Y. 617), the opinion in which was not reported, the situation and determination was identical.

The controversy in *Wetmore* v. *Wetmore* (149 N. Y. 520) was between the *cestui que trust* and his divorced wife who sought to enforce the pecuniary provisions of her alimony decree upon the income of the trust. Her contention was validated on the strictly logical extension of the previously determined doctrine that the income of the trust is primarily applicable to the *cestui que trust* and his dependents, and that the wife, though divorced, was still such a dependent. The keynote of the decision is found on page 529, where the court observes: "Equity will not feed the husband and starve the wife. Neither will it favor the wife to the detriment of the husband. Treating them as one, and both entitled to support out of the income of the estate, so far as creditors are concerned, furnishes a just rule and a safe basis for adjustment where the question of support arises between themselves."

*Matter of Yard* (116 Misc. 19) was an application by a separated wife for enforcement of a portion of a separation agreement which provided that she should receive one-half of the income payable to her husband under a trust. This was opposed by the husband on the ground of alleged infringement of section 15 of the Personal Property Law. The only other party to the proceeding was the trustee, who was neutral. The learned surrogate expressly found that the allowance provided for the wife was "extremely reasonable" and granted the relief on the same theory as that adopted in *Wetmore* v. *Wetmore*, holding (p. 22) that "the terms of a valid separation agreement seem to be equally as forceful and effectual as a judicial allowance of alimony, and they are conclusive as to the amount of alimony either temporary or final. * * * Such a contract is binding upon both parties, unless set aside or impeached."

*Demuth* v. *Kemp* (159 App. Div. 422) was expressly decided merely on a question of procedure. Even though its dicta be given the authoritative weight of determinations, they add nothing new to and contain nothing divergent from the composite doctrines of the authorities previously considered.

The same observations apply to *Braman* v. *Braman* (236 App. Div. 164), which, so far as presently pertinent, consists merely of an extensive quotation from *Wetmore* v. *Wetmore*, and an application of its authority to a substantially identical situation.

In *Matter of Burr* (143 Misc. 877), Surrogate FOLEY held that the reparation of a devastavit by a defaulting trustee was entitled to preferential solution from income payable to him from a trust, over alimony claims of his divorced wife.

These are the only authorities upon which the petitioner relies for a demonstration that the rule of section 15 of the Personal Property Law is to be relaxed in favor of an assignment to a wife for support, and they fall far short of the demonstration requisite to accord her a preference over the present judgment creditor.

It is entirely true, on the authority of these precedents, that the income of a spendthrift trust inures beneficially to a dependent of the *cestui que trust*, as well as to him, and that in determining the existence of a surplus of income which may be made available to the creditor, the composite and collective needs of all are to be taken into consideration. When, however, a surplus has been found to exist, either in a judgment creditor's action or in a proceeding under section 684 of the Civil Practice Act, the amount thereof becomes an overriding lien upon the entire trust income and the sum applicable to the *cestui que trust* and his dependents, collectively, is decreased by that amount.

After the deduction of this sum, the several rights of the *cestui* and his dependents in the reduced sum are to be adjusted among themselves either by judicial proceeding or mutual agreement.

Where, as in the case at bar, an adjustment has been reached between the *cestui* and his dependents, this must stand until altered in some appropriate manner. Being an *inter vivos* arrangement, jurisdiction for that purpose is obviously lacking in this court.

The final result in the present controversy is that it is the duty of the trustee of this trust to obey the lawful presently effective mandate of the Supreme Court to pay the judgment creditor the ten per cent of the accruing income which has been awarded it until the order in this regard has been modified or abrogated by the Supreme Court or until the claim of the creditor has been satisfied.

The remaining income of the trust, to the extent agreed between the *cestui que trust* and the petitioner, is to be paid to the latter in accordance with the agreement until some different method of allocation has been prescribed by competent authority.

In view of the fact that a stay on any disbursement by the trustee is said to be presently in force, the trustee will, of course, await its lifting before making any disbursements whatsoever.

Enter decree on notice in conformity herewith.