## ACHESON v. COMMISSIONER OF INTERNAL REVENUE.

### No. 11466.

Circuit Court of Appeals, Fifth Circuit.

May 15, 1946.

Paul P. Cohen, of Niagara Falls, N.Y., for petitioner.

I. Henry Kutz, Harold C. Wilkenfield, and Helen R. Carloss, Sp. Assts. to Atty. Gen., Sewall Key, Acting Asst. Atty. Gen., and J. P. Wenchel, Chief Counsel, Bur. Int. Rev., and Rollin H. Transue, Sp. Atty., Bur. Int. Rev., both of Washington, D. C., for respondent.

Before HOLMES, McCORD, and WALLER, Circuit Judges.

McCORD, Circuit Judge.

This appeal involves the income tax liability of Margaret M. Acheson. The taxpayer sought to deduct in 1935 the amount of $143,252.54 as a bad debt under Sec. 23(k) of the Revenue Act of 1934, 264. U. S.C.A. Int.Rev.Acts, page 673, and Treasury Regulation 86, promulgated thereunder. The Commissioner disallowed the deduction and his action was affirmed by the Tax Court.

The taxpayer assigns as error the holding of the Tax Court, (1) that taxpayer was not entitled to the rights of a subrogee, and (2) that the debt was not ascertained to be worthless within the taxable year the deduction was taken.

The Tax Court found that prior to May 23, 1931, Edward G. Acheson, Jr. was indebted to the Power City Trust Company for a loan evidenced by a collateral note. At that time, he was president of the Acheson Corporation and requested the Board of Directors for "some help in that direction." The Board determined that instead of lending additional collateral the corporation would make him a loan and take up the note and collateral. Pursuant thereto, Acheson Corporation advanced to Edward G. Acheson, Jr. $275,047.01 upon his 4½ per cent three months promissory note dated May 23, 1931, and the collateral was released by the Power City Trust Company.

Margaret M. Acheson, the mother of Edward G. Acheson, Jr., without being requested so to do, and at a time when she was neither a director nor an officer of the Corporation, became liable for her son's indebtedness in this wise: "I hereby agree to indemnify the Acheson Corporation for any loss that may occur through the loan being made to Edward G. Acheson Jr. as of May 23, 1931 by the Corporation for the amount of Two Hundred Seventy Five Thousand Forty Seven Dollars and One Cent. ($275,047.01)."

On May 23, 1931, the value of the collateral based upon market quotations was $227,509.37. By a renewal note dated August 23, 1931, the payment of the loan was extended for three months. The note was not paid when presented to the maker at the date of maturity, November 23, 1931. The value of the collateral was continuing to decline and Margaret M. Acheson be-

came concerned as to her liability under her agreement. The collateral was sold for $137,054.80, and $5,260.33 applied to interest, $131,794.47 applied upon the principal, leaving a balance due of $143,252.54. On December 12, 1935, a written demand for the balance was made upon Edward G. Acheson, Jr., and he was unable to meet the demand. A written demand for payment was thereupon made upon Margaret M. Acheson, and on December 30, 1935, by check for $143,252.54 to the Acheson Corporation, she paid the indebtedness.

In 1931, Edward G. Acheson, Jr., regarding the demand for payment and the sale of the collateral as unfriendly to him, severed his connection with the company, and since that time his source of income has been principally from a trust created by his father in 1928, from which he received $48,224 in 1931, $26,160 in 1932, $18,248 in 1933, $46,629 in 1934, and $39,479 in 1935. In addition, he received $5,000 as executor's commission from the estate of his father during 1934. At various times during these years he was ill and as a result incurred a substantial hospitalization and medical expense. From May 23, 1931 to 1935, he owned and maintained a large house in Lewiston, New York, and maintained an apartment in New York City. He also owned a small house in Lewiston which cost him $7,000. The large house originally cost $18,000, but by the addition of three acres of land and improvements his investment was increased to $45,000 or $50,000. On December 19, 1935, his mother created a trust, of which he was income beneficiary for life, and transferred to the trust 140 shares of Acheson Corporation stock. He received no income from this trust in 1935. All of his income until 1943 was used for living expenses, hospitalization, state and federal taxes, and for assistance to his three children. He was unable to pay his income taxes in 1932 through 1934, and did not become current until 1943.

Margaret M. Acheson was a good business woman and understood the liability assumed in her agreement to pay her son's indebtedness, and she was familiar generally with his financial condition. She did not obtain the note from the corporation when she paid it, nor did she demand payment of her son, although the record shows that he was not insolvent.

Before a debt may be charged off as worthless the taxpayer must be able to demonstrate with a reasonable degree of certainty the amount that is uncollectible. Helvering v. Smith, 4 cir., 132 F.2d 965; Hadley Falls Trust Co. v. United States, 1 cir., 110 F.2d 887; Bingham v. Commissioner, 2 cir., 105 F.2d 971.

The taxpayer may claim the bad debt deduction only after she has shown that a deductible loss occured in 1935. The burden rests squarely upon her to establish the essential facts showing her right to the claimed deduction. Burnet v. Houston, 283 U.S. 223, 277, 51 S.Ct. 413, 75 L.Ed. 991.

All pertinent facts and circumstances must be considered, regardless of their objective or subjective nature, and the ultimate question is usually one of fact to be determined in the first instance by the Tax Court. Boehm v. Commissioner, 66 S.Ct. 120.

Here the taxpayer made no effort to subject the assets of her son to the payment of the debt. She made no attempt to reach the trust income although it is apparent that some of it might be reached. Matter of Ungrich, 201 N.Y. 415, 94 N.E. 999; Matter of Havemeyer, 127 Misc. 197, 216 N.Y.S. 334; Matter of Randolph, 159 Misc. 688, 288 N.Y.S. 678; Sec. 684, N.Y. Civil Practice Act.

The fact that the debtor was her son and she might therefore be unwilling to enforce payment does not entitle her to the bad debt deductions. Thom v. Burnet, 60 App.D.C. 414, 55 F.2d 1039; Allen-Bradley Co. v. Commissioner, 7 cir., 112 F.2d 333; Montgomery v. United States, 23 F. Supp. 130, 87 Ct.Cl. 218, certiorari denied, 307 U.S. 632, 59 S.Ct. 833, 83 L.Ed. 1514.

We are of opinion that the taxpayer has failed to show that the debt was ascertained to be worthless in the year it was charged off and the decision of the Tax Court must therefore be affirmed.