S. Samuel Di Falco, S.
The objeetant in this accounting proceeding is the daughter of the sole income beneficiary of the trust for which accounting is made. The objeetant’s father and mother were separated in 1937 and thereafter divorced. The objeetant is the sole issue of that marriage. The separation agreement between her parents required her father to pay a stipulated sum for the support of his wife and child until the former should remarry, and in that event, he “ shall, nevertheless pay for the education, maintenance, support, living expenses, etc. of the child, the sum of Two Thousand Six Hundred Dollars ($2,600) per annum, to be paid by the Irving Trust Company as trustee, in as nearly as possible equal monthly installments, in advance, on or before the 15th day of each month during the lifetime of the child or until such child shall marry.” The agreement further provided that the father, upon the remarriage of his wife, shall ‘1 by written instructions, authorize, direct and empower the Irving Trust Company as trustee of the aforementioned trust, to make such payments direct to the child or her legal guardian from the income payable to him from said trust, and will further direct that in the event that the income from such trusts, in any one month, shall not be sufficient to pay the full amount of such monthly payments to the child, any deficiency in the payments to the child shall be made up in the *848 subsequent month or months before any payments shall be made to Mr. Boissevain.”
The objectant’s mother remarried on August 12,1942. In that month, the beneficiary, in a letter to the trustee, did “ authorize, direct and empower the Irving Trust Company” to make the stipulated payments for the benefit of his daughter. The instructions followed out the terms of the agreement quoted above. The trustee made all payments up to the month of May, 1946. Early in that month the beneficiary wired the trustee: “ Don’t pay Mrs. McGuire [guardian of the then infant objectant]. Will arrange with her. Wire me all you can.” He thereafter wrote the trustee, detailing financial difficulties, and ending with the statement: “I have written Mrs. Maguire and explained the situation to her. I shall I believe be able to make this up to her next month as I shall then have some money coming in here.”
The trustee made no further payment to the guardian of the infant. Neither the objectant nor her mother (who was her guardian) received any payment directly from the beneficiary or had any word from him. They endeavored to locate him through the trustee, but the trustee, although transmitting all messages to' him, would not reveal his whereabouts to the guardian or to the objectant. The objectant married on November 24, 1951, and her rights under the agreement thereupon ceased. The objectant seeks payment from the trust income of the monthly installments prescribed by the separation agreement from May 1,1946 to November 1,1951. It is conceded that there is income on hand sufficient to satisfy her claim, resulting from the allocation to income in this accounting proceeding of certain stock dividends. The beneficiary has been served by publication, but he has not appeared or answered the demand of the objectant.
The accounting trustee had originally filed an answer to the objections. Its first defense against a personal surcharge is said to be academic because the objectant states that she is seeking payment from the income on hand and not a surcharge against the trustee. In addition, the answer sets up several affirmative defenses: (a) that the objectant was voluntarily supported by other persons and has sustained no loss which would justify her in seeking to recover from the trust herein; (b) that her claim is barred by the applicable Statute of Limitations; (c) that the cause of action is barred by the pendency of an action in the •Supreme Court instituted by the objectant to recover from her father upon the same cause of action as set forth in the objections; (d) that the objectant is guilty of laches and is estopped from recovering from the trust estate; (e) that the trustee is required to make other payments from income, and if the object- *849 ant is entitled to any payment therefrom, the court should instruct trustee in respect of the priority of payment. The issues were placed upon the Hearing Calendar. The facts are not in dispute. The only question presented at the hearing or argued in the briefs is the right of the objectant to recover upon the so-called assignment of income.
Although the income of a trust is neither assignable nor alienable, there is ample authority for the judicial application of trust income in satisfaction of claims of dependents of the income beneficiary for support and maintenance. (Restatement, Trusts, 2d, § 157; 2 Scott, Trusts [2d ed.], § 157.1; Wetmore v. Wetmore, 149 N. Y. 520; Hoagland v. Leask, 154 App. Div. 101, affd. 214 N. Y. 645; Whedon v. Whedon, 176 Misc. 504; Matter of Yard, 116 Misc. 19; Matter of Randolph, 159 Misc. 688; Fink v. Fink, 139 Misc. 630; 1938 Report of N. Y. Law Rev. Comm., p. 333.) The powers of the court in thus directing payment of trust income to one not a beneficiary under the trust instrument, find their origin in the public policy that a beneficiary of a trust created for his support and maintenance may not enjoy the income without making provision for those to whom he owes a legal duty of support. (2 Scott, Trust [2d ed.], § 157.1, p. 1110; Wetmore v. Wetmore, supra.)
The pending proceeding, however, does not involve a request for use of part of the income for the maintenance and support of a dependent child. The objectant had been supported and maintained by her mother and stepfather. She is now supported by her husband. There is no proof that she had any funds of her own or that any of her individual property was used for her support. It is true that one who expends his funds in discharge of an obligation imposed by law upon a husband or father, has a cause of action for reimbursement (De Brauwere v. De Brauwere, 203 N. Y. 460), and also that a donee beneficiary of a contract may have rights and remedies based upon the contract made for her benefit (Restatement, Contracts, § 133 et seq.). Claims of that nature, if any exist, are not asserted here. What the objectant does claim is that there was equitable assignment of the income of the trust to the extent of $2,600 a year, that an assignment of income within the family unit is valid and effectual, that it is not a violation of section 15 of the Personal Property Law, and that the assignment herein gave her a vested interest in the assigned income. The trustee contends that she has no standing to demand any part of the trust income.
The income beneficiary never made an actual assignment of any part of his income to or for the benefit of his daughter. In the separation agreement he promised that he would, by written *850 instructions, authorize, direct and empower the trustee to make the periodic payments directly to the guardian of the child. He actually did, by written instructions, authorize, direct and empower the trustee to make the payments as specified in the agreement, covering in his letter of instructions all of the conditions and provisions of the agreement. However, he subsequently revoked those instructions. The objectant claims that the separation agreement and the beneficiary’s actions pursuant to its requirements, resulted in an equitable assignment of income to her. (See Brill v. Tuttle, 81 N. Y. 454; Williams v. Ingersoll, 89 N. Y. 508; Holmes v. Evans, 129 N. Y. 140, 144; cf. 2 Scott, Trusts [2d ed.], § 152.6.) Insofar as the trustee obeyed the instructions and paid income to the guardian, there was an effective assignment of that income. (Matter of Oakley, 116 Misc. 494, affd. 207 App. Div. 811.) Possibly in other aspects the transaction might be viewed as giving the objectant equitable remedies. However, the important question is not whether the transaction could be regarded as an equitable assignment. Even if it were an explicit assignment by formal agreement, the fact is that the beneficiary took steps to revoke his directions for payment. The question, therefore, that is presently before the court is whether, as between income beneficiary and trustee, or as between the former and the donee beneficiary, the instructions for payment could be effectively revoked. Under section 15 of the Personal Property Law, an attempted assignment of income is regarded merely as a direction to the trustee to pay income as it accrues and it is subject to revocation by the beneficiary at any time with respect to income still in the hands of the trustee (Matter of Stern, 13 Misc 2d 605, 608 and cases cited). Thus even if there were an assignment of future income, it is revocable under section 15. The objectant argues that section 15 does not stand in the way of an effective assignment of income to her by her father, and that such an assignment is not made voidable by that section. Her argument finds some support in statements made by the court in Matter of Littauer (285 App. Div. 95). In that case, the court said that although there is no general principle a substantive law which authorizes a court to make allocation of trust income to others than the designated beneficiaries, there are numerous cases in which courts have made a continuing direction for payment of income to a beneficiary’s dependents. These decisions were said to fall into three categories, one of which embraced those cases where there was written assignment of a portion of the income of the trust by the income beneficiary to his wife. In discussing these cases, the court did say that the ‘ ‘ rule prohibiting assignments is theretofore held to be inap *851 plicable to an agreement by the beneficiary that a designated part of the income should be paid to his wife for her support or the support of their children and the courts have directed the trustee to comply with the agreement ” (Id., p. 98), citing Matter of Yard (supra); Matter of Randolph (supra) and Bursch v. Bursch (60 N. Y. S. 2d 633). The objectant reads this statement as meaning that an assignment of income within the family unit is in all respects valid and enforcible, and that section 15 of the Personal Property Law, is wholly inapplicable to such an assignment. She argues that she has an equitable assignment which the beneficiary was precluded by his contract from revoking or canceling. The cited case must, however, be read in the light of the court’s decision that the facts before it did not come within any of the authorities which permitted diversion of income to the family of the beneficiary. In discussing the cases where continuing directions for such payment of income were made, the court Avas not ruling that section 15 had no application at all to an assignment within the family, but was merely pointing out that this statute did not prevent the courts from giving such effect to these assignments as equity and justice demanded. The whole tenor of the discussion, as well as the citations in support of its statements, make it clear that the court was merely restating an established rule rather than formulating a new rule that had not theretofore been applied.
In the frequently cited Matter of Yard, Surrogate Foley had found as a fact that the alloAvance that had been fixed in the agreement Avas “ extremely reasonable ”, and the consent of the husband to the payment of such sum was read by the Surrogate as a recognition by the husband of his duty to provide for the family and of the reasonableness of the amount fixed in the agreement. In other words, the court, acting under its equitable powers, accepted as reasonable the sum fixed by the parties and directed payment of the portion of the income of the trust that the husband was under legal and moral obligation to provide for his wife. That approach to the problem was more clearly stated in Matter of McCarthy (N. Y. L. J., May 15, 1942, p. 2075, col. 5) where Surrogate Foley ruled that a judgment of the Supreme Court in an award of alimony was not conclusive upon the Surrogate in the exercise of his equitable power to make a continuing direction from income for the support of the beneficiary’s wife, and that he was required to fix such amount as he deemed reasonable under the circumstances. In a later proceeding in the same estate, Surrogate Delbhahty reaffirmed the principle. Any allowance to the wife, said the Surrogate, ‘ ‘ is made pursuant to the equity powers of the Court and not in the execution of the *852 judgment * * * awarding alimony.’’ (Matter of McCarthy, N. Y. L. J., Feb. 20, 1946, p. 696, cols. 5-6; see, also, 2 Scott, Trusts [2d ed.], § 157.1, pp. 1111-1114..)
In another of the cited cases {Matter of Randolph), it is patent that the court did not accept the assignment of trust income by husband to wife as in all respects valid, but regarded it rather as recognition by the parties of the portions needed by them respectively. In that case a separation agreement provided that the wife should receive a stated sum from the trust income for her support and support of the children, and subsequently a creditor of the income beneficiary acquired a claim and obtained judgment against him. Pursuant to the applicable statute, execution was issued against the income in the hands of the trustee. The court was required to define the rights of the respective claimants to income. It held that the income of the trust inured beneficially to the dependents of the beneficiary, as well as to him, that in determining the existence of a surplus of income which may be made available to the creditor, the composite needs of all were to be taken into consideration, but that when a surplus was found to exist either in a judgment creditor’s action or in a proceeding under the Civil Practice Act, the amount of the surplus became an overriding lien upon the entire trust income and the sums applicable to the beneficiary and his dependents, collectively, were decreased by that amount. (159 Misc. 688, 693.) If the assignment to the wife had been in all respects valid, the execution against the beneficiary’s property obviously could not have been satisfied out of the assignee’s share.
The third of the cited cases (Bursch v. Bursch, supra) construed the agreement between husband and wife as not being an assignment of income but rather as an engagement by the husband to pay over the income after he received it. All that the plaintiff sought in that action was a money judgment against the defendant. This decision, in Professor Scott’s view “ seems thoroughly sound. * * * In spite of incurring [a liability for breach of contract] his right to receive the income under the trust is not impaired, but any other property which he may have which is not protected from the claims of his creditors can be reached in satisfaction of the claim against him.” (2 Scott, Trusts [2d ed.], § 152.6, p. 1068.)
Section 15 of the Personal Property Law, does not contain any exception in respect of assignments within the family unit. The rights of such assignees are to be judged under established principles of equity jurisprudence. The objectant does not seek to bring herself within those principles. She relies solely upon *853 her rights under the agreement, which she views as constituting her an assignee. The decisions in this State do not go so far as to validate and enforce all assignments of trust income made within the family unit.
It must he conceded that the objectant does have rights against her father which he has totally ignored. If it were merely a question of sympathy, the objectant is in the better position to command all of it. If it were merely a question of cutting across all rules of substantive law and procedure in order to do rough justice, one might be inclined to award her out of the income what was long ago promised. However, there are others who may assert claims against the trust estate or the beneficiary upon a basis similar to the objectant’s. Her stepfather or her mother may have rights based upon their expenditure of funds for her support. Moreover, there is an action pending in the Supreme Court and while there is no proof in this record of its scope or character, its existence is not denied. There are remedies available to her to protect whatever rights she might have as a creditor against accumulated income of this trust. This court cannot hope to settle all possible questions arising out of the beneficiary’s breach of his obligations. It must address itself solely to the question before it. The objectant is not entitled to payment from the income of the trust on the proof submitted by her in the present record. Her objections are, therefore, dismissed.