BRUCE V. GREEN and GENEVIEVE C. GREEN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Green v. Commissioner
Docket No. 3120-74.
United States Tax Court
T.C. Memo 1976-127; 1976 Tax Ct. Memo LEXIS 277; 35 T.C.M. (CCH) 569; T.C.M. (RIA) 760127; April 22, 1976, Filed *277 During 1971, petitioner made 22 trips to a debtor corporation's place of business to attempt to collect a business debt; petitioner also engaged a collection agency and had lawsuits filed during 1971 in his unsuccessful efforts to collect the debt. At the end of 1971, after consulting his attorney about the progress of the lawsuits, petitioner concluded that the debt was worthless and deducted it on his 1971 income tax return. In February of 1972, however, petitioner's attorney filed an amended complaint in one of the lawsuits against an officer of the debtor, attempting to hold him individually liable for the debt; also, in May of 1972, petitioners' attorney returned a claim form to bankruptcy proceedings of the debtor. The amended complaint was promptly dismissed, the debtor went into bankruptcy, and the debt was never collected. Held, petitioner properly deducted the bad debt in 1971. Sec. 166(a), I.R.C. 1954. Bruce V. Green, pro se. Steven S. Brown, for the respondent. WILES
MEMORANDUM FINDINGS OF FACT AND OPINION WILES, Judge: Respondent determined a deficiency of $2,291 in petitioners' 1971 income tax. Petitioners have conceded some issues; the only issue for decision is whether a certain business bad debt became worthless and hence deductible under section 166[1] in 1971. FINDINGS OF FACT Some facts were stipulated and are found accordingly. Petitioners, husband and wife, resided in Bloomington, Illinois, in 1971 and when they filed their petition herein. They timely filed a joint Federal income tax return for 1971 with the Internal Revenue Service Center *279 at Kansas City, Missouri. During 1970 and 1971, Bruce V. Green (hereinafter petitioner) operated an advertising agency, "Bruce V. Green, Advertising," as a sole proprietorship. In 1970 and early 1971, this agency performed advertising services for Creve Coeur Manufacturing Company (hereinafter Creve Coeur), Big Bertha Industries (hereinafter Big Bertha), a subsidiary of Creve Coeur, and Juice-Master Manufacturing Company (hereinafter Juice-Master), a division of Creve Coeur. At least some account payments for these clients became delinquent as early as December of 1970, and petitioner cancelled all further credit for Big Bertha on March 3, 1971. Petitioner extended credit to Juice-Master for advertising later in 1971 as follows: $1,550 on April 15; $1,990 on May 15; and $1,990 on June 15. Credit was also extended to Creve Coeur for $1,100 for advertising on June 4. Between January and August of 1971, petitioner made twenty-two personal visits to these companies in attempting to collect amounts owed by them. These trips were unsuccessful. On July 20, 1971, petitioner turned these accounts over to attorney Albert Hoopes, a collection agent. His efforts were also ineffectual, *280 except for recovery of $155.51, which was remitted to petitioner on August 24, 1971. The uncollected balance of these accounts after this remittance was $6,474.49. On October 21, 1971, another attorney retained by petitioner, William Allison, filed lawsuits against Creve Coeur and Juice-Master in the Illinois Circuit Court for Tazewell County for the amounts due, plus interest. On October 27, 1971, Creve Coeur filed a motion alleging that the complaint did not state a cause of action. This motion was denied on or about November 29, 1971. On December 17, 1971, Creve Coeur filed an answer denying every substantive allegation of the complaint. On December 20, 1971, petitioner met with Allison and concluded that the debt was uncollectible. Petitioner's agency utilized the accrual accounting method. Accordingly, amounts due on these accounts were included in income on petitioner's 1971 income tax return. Petitioner also claimed a business bad debt deduction of $6,474 on that return. The lawsuits against Creve Coeur and Juice-Master were superseded on February 7, 1972, by institution of voluntary bankruptcy proceedings by Creve Coeur in Federal District Court under Chapter *281 XI of the Bankruptcy Act, ch. 575, 52 Stat. 905 (1938), 11 U.S.C. sec. 701 et seq. (hereinafter chapter XI proceedings). On February 22, 1972, Allison amended the complaint in the lawsuit against Juice-Master to include Lloyd D. Slagell, president of Creve Coeur and an officer of Juice-Master, as an additional party defendant. On February 28, 1972, Slagell filed an answer which denied every allegation. The amended complaint against Slagell, which sought to hold him individually liable for the liabilities of Juice-Master, was dismissed on or about April 4, 1972. During the Chapter XI proceedings, various forms were forwarded to Allison, who forwarded at least some of them to petitioner. On May 9, 1972, petitioner and Allison returned one of them, a claim form showing $6,474.49 due, plus interest. As a result of those proceedings, on August 31, 1972, the District Court confirmed a plan of "arrangement" for Creve Coeur under which Creve Coeur was relieved of 75 percent of its debts to all unsecured creditors, including petitioner, and was scheduled to pay the remaining 25 percent to petitioner and other unsecured creditors in installments beginning in April *282 of 1973. All of Creve Coeur's existing assets were committed to payment of secured creditors. In 1973, a bankruptcy petition was filed against Creve Coeur, and Creve Coeur was adjudicated bankrupt sometime before January 9, 1974. The Chapter XI proceedings were accordingly dismissed on January 9, 1974. The payments scheduled to be made under the Chapter XI "arrangement" beginning in April of 1973 were not in fact made by Creve Coeur, and petitioner has never recovered any part of the debts due on these accounts. Creve Coeur has since been dissolved. By a notice of deficiency dated April 8, 1974, respondent disallowed the bad debt deduction of $6,474 claimed for 1971. The notice of deficiency contended that 75 percent of the debt became partially worthless by reason of the Chapter XI proceedings in 1972 and made no assertions with regard to the remaining 25 percent of the debt. OPINION The only issue for decision is whether a certain business bad debt owed to petitioner became worthless in 1971. Section 166(a)(1) allows as a deduction "any debt which becomes worthless within the taxable year." Petitioner has the burden of showing that the debt actually did become *283 worthless during the year for which the deduction is sought. Redman v. Commissioner,155 F. 2d 319 (1st Cir. 1946), affg. a Memorandum Opinion of this Court; Eugene M. Alexander,26 T.C. 856, 862 (1956). "The date of worthlessness is fixed by identifiable events which form the basis of reasonable grounds for abandoning any hope for the future." W. A. Dallmeyer,14 T.C. 1282, 1291-1292 (1950). See also United States v. S. S. White Dental Mfg. Co.,274 U.S. 398 (1927), and Huston v. United States,96 F. Supp. 999, 1002 (W.D.Pa. 1951). When a particular debt becomes worthless is thus a question of fact. Acheson v. Commissioner,155 F. 2d 369, 371 (5th Cir. 1946), affg. a Memorandum Opinion of this Court. This issue requires a practical approach, not a legal test, which is flexible in nature and which is based upon the exercise of sound business judgment. Boehm v. Commissioner,326 U.S. 287 (1945), rehearing denied 326 U.S. 811 (1946); Minneapolis, St. P. & S. Ste. M. Ry. v. United States,164 Ct. Cl. 226, 240-241 (1964). Furthermore, *284 as the Court of Claims stated in the Minneapolis case, supra at 241: In making such a determination the taxpayer must follow a rule of reason, avoiding alike the Scyllian role of the "incorrigible optimist" and the Charybdian character of the "stygian pessimist." * * * To be deductible, a debt need not be proven worthless beyond all peradventure, since a bare hope that something might be recovered in the future constitutes no sound reason for postponing the time for taking a deduction * * * The taxpayer is not required to postpone his entitlement to a deduction in the expectancy of uncertain future events nor is he called to wait until some turn of the wheel of fortune may bring the debtor into affluence. (Citations omitted.) After considering all facts and circumstances of this case, we have concluded that petitioner properly deducted the bad debt in issue in 1971. Petitioner made repeated efforts to collect these debts by the end of 1971. He visited the debtor-companies personally twenty-two times between January and August of that year, to no avail. He turned these accounts over to Albert Hoopes, a collection attorney, in July, and all Hoopes could recover on the *285 $6,630.00 debt was $155.51, which was remitted to petitioner in August of that year. Finally, petitioner had lawsuits filed against the debtors by another attorney, William Allison, in October of 1971. The debtor-defendants denied all liability on the debts, and petitioner concluded at a meeting with Allison in December of 1971 that the suits would be fruitless. We thus think that petitioner had established at the end of 1971 by objective standards that the debt was then worthless. As the Court of Claims stated in Minneapolis, supra at 240, "it is often impossible to select a single factor or 'identifiable event' which clearly establishes the time at which a debt becomes worthless and thus deductible. More often it is a series of events which in the aggregate present a picture establishing that the debt in question has become worthless." Such a picture has been painted here; petitioner clearly had reasonable grounds to believe the debt was worthless at the end of 1971. Only an "incorrigible optimist" would think the debt still was collectible after all of petitioner's unsuccessful efforts. We note also that petitioner finally concluded at his meeting with attorney *286 Allison in December of 1971 that the debt was uncollectible. Such facts raise an inference that the debt was uncollectible in attorney Allison's opinion. In the past, such an opinion, formed with knowledge of facts concerning the debtor's financial condition, has been held adequate to support deductibility of bad debts. See, e.g., Richard Downing,43 B.T.A. 1147, 1152 (1941); Edward K. Johnstone,17 B.T.A. 366, 368 (1929); United States Tool Co.,3 B.T.A. 492 (1926). [3]
*287 Furthermore, petitioner believed at the end of 1971 that the debt was worthless. Although this is a subjective criterion, "[the] taxpayer's attitude and conduct are not to be ignored * * *." Boehm v. Commissioner,326 U.S. 287 (1945), rehearing denied 326 U.S. 811 (1946). Taxpayer's testimony in this regard is uncontradicted. We accordingly hold that petitioner has sustained his burden of proving that the debts were in fact worthless at the end of 1971. He had reasonable grounds for believing there was no chance of recovery of the debts at that time. The soundness of his business judgment is reaffirmed by hindsight: although subsequent facts may not be used as evidence of the fact of worthlessness in a particular year, they may be used to evaluate the soundness of taxpayer's judgment that a debt was indeed worthless. Cf. New York Water Service Corp.,12 T.C. 780, 788 (1949), and 5 Mertens, Law of Federal Income Taxation, sec. 30.37, p. 89 (1975 rev.), with Minneapolis, St. P. & S. Ste. M. Ry. v. United States,supra at 241. Respondent disagrees with this conclusion on several grounds. First, respondent *288 contends that the amendment of complaint of the lawsuit against Juice-Master in February of 1972 shows that petitioner still felt he had reasonable grounds to recover on the debt in 1972. We disagree. As discussed above, petitioner has shown that the debt was worthless at the end of 1971. Continuation of legal action will not preclude deduction where worthlessness has already been shown. A perfect example of this principle is J.S. Wahl,21 B.T.A. 822 (1930). In that case, taxpayer concluded at the end of 1922 that a debt was worthless and accordingly deducted it. His action was based in part on his conclusion that he had practically no chance to recover upon the debt in a lawsuit. In 1923, taxpayer's attorney, employed upon a contingent fee basis, brought suit anyway against the debtor in a further attempt to recover. We held that the debt was properly deducted in 1922 because it had been shown to be worthless; the later suit, which was dismissed on a motion for directed verdict, did not prevent allowance of the deduction. In this case, too, the debt was already shown to be worthless, and the amended complaint was dismissed shortly after it was filed. Furthermore, *289 we note that the basis of the amended complaint was an attempt to hold an officer of the debtor-corporation individually liable on the corporation's debts, an allegation which is as a practical matter so rarely sustained that it might almost be deemed frivolous on its face. We accordingly reject respondent's argument on this point. Respondent also contends that petitioner's return of a claim form to Chapter XI bankruptcy proceedings in May of 1972 evidences reasonable grounds of hope on petitioner's part that recovery was still possible. Again, petitioner has shown that the debt was worthless at the end of 1971. Furthermore, return of the claim form was a passive act, not initiated by petitioner. Finally, although petitioner need not be an "incorrigible optimist" in determining worthlessness, he may nevertheless act as a prudent man by, for example, preserving his claim in the event of a later return to solvency by the debtor. Cf., e.g., Charles Henry Mattlage,3 B.T.A. 242, 245 (1925); Redfield v. Eaton,53 F. 2d 693, 695 (D. Conn. 1931). Respondent also notes that the bankruptcy petition filed requested an "arrangement" under Chapter XI *290 of the Bankruptcy Act. Such an "arrangement" is voluntarily filed by the debtor and requests time for the payment of unsecured debts; it does not automatically call for or result in liquidation of the debtor. 8 Collier, Bankruptcy 4-6, 343 (14th ed.). The probably procrastinated decision of the debtor in this case to avoid total bankruptcy by seeking escape under Chapter XI is understandable, but the voluntary filing of this petition by the debtor just seven weeks after petitioner concluded that the debt was uncollectible tends to confirm, rather than contradict, petitioner's sound business judgment that the debt was worthless at the end of 1971. Furthermore, in a Chapter XI petition the debtor must acknowledge that he is insolvent or unable to pay his debts as they mature. See Collier, supra at 388-390. The admitted insolvency of the debtor in the first week of February of 1972, when coupled with the commitment of all of the debtor's assets to payment of secured creditors' claims, lends additional support to petitioner's conclusion that he would never collect on this debt. Finally, any hope by the referee and creditors that the debtor might be able to pay some debts, *291 as evidenced by a schedule for repayment of 25 percent of all unsecured creditors' claims, was unrealistic under the circumstances, as later developments bore out: no payments were ever made on the unforgiven 25 percent, petitioner never recovered any amounts on his claims, the debtor was adjudicated wholly bankrupt in 1973, and the debtor was later dissolved. Respondent also contends that petitioner has failed to produce specific demonstrative evidence as to the debtor's financial condition. Evidence of the debtor's financial condition, however, is only one factor to be considered, and we find that the overall facts and circumstances of this case justified the deduction in 1971. Furthermore, we refuse to impose such a burden where the facts otherwise show, as here, that the debt was worthless in the year claimed; certainly refusal of the debtor to make payment in light of petitioner's personal collection efforts, the collection agent's collection efforts, and a refusal to pay the debts in the lawsuits filed, gave rise to strong inferences that the debtor was unable to pay. Cases cited by respondent contrary to our conclusion herein are clearly distinguishable because they involved *292 significantly different factual patterns or legal principles. Because of concessions made by petitioner with regard to other issues, Decision will be entered under Rule 155.
Footnotes
1. Statutory references are to the Internal Revenue Code of 1954, as amended.↩
3. In 1942 the standard for deductibility of bad debts was changed from ascertainment of worthlessness by the taxpayer to proof of actual worthlessness by the taxpayer, a stronger burden of proof. See Boehm v. Commissioner,326 U.S. 287 (1945), rehearing denied 326 U.S. 811 (1946); Redman v. Commissioner,155 F. 2d 319, 320 (1st Cir. 1946); Minneapolis, St. P. & S. Ste. M. Ry. v. United States,164 Ct. Cl. 226, 239-240 (1964); W.A. Dallmeyer,14 T.C. 1282, 1291↩ (1950). The cases cited in the text could support a finding of actual worthlessness under the existing standard, just as they supported a finding of ascertainment of worthlessness under the prior standard, and we accordingly believe they have retained their vitality through the change in standards.